008765

00662

<u>NOTICE OF CONFIDENTIALITY RIGHTS</u>: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### MORTGAGE, LINE OF CREDIT MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT, FIXTURE FILING AND ASSIGNMENT OF PRODUCTION

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY AND FUTURE ADVANCE PROVISIONS. THIS INSTRUMENT COVERS THE INTEREST OF MORTGAGOR IN MINERALS OR THE LIKE (INCLUDING OIL AND GAS) BEFORE EXTRACTION AND THE SECURITY INTEREST CREATED BY THIS INSTRUMENT ATTACHES TO SUCH MINERALS AS EXTRACTED AND TO THE ACCOUNTS RESULTING FROM THE SALE THEREOF AT THE WELLHEAD. THIS INSTRUMENT COVERS THE INTEREST OF MORTGAGOR IN FIXTURES. THIS FINANCING STATEMENT IS TO BE FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL ESTATE RECORDS. PRODUCTS OF THE COLLATERAL ARE ALSO COVERED.

### NOTICE TO MORTGAGOR

**A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE COLLATERAL AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY MORTGAGOR UNDER THIS MORTGAGE.**

FROM

CORNERSTONE E&P COMPANY, LP

(Mortgagor, Debtor and Grantor)

TO

UNION BANK OF CALIFORNIA, N.A., as Administrative Agent
(Mortgagee, Secured Party and Grantee)

October 10, 2008

For purposes of filing this Mortgage as a financing statement, the mailing address of Mortgagor is 5605 MacArthur Boulevard, Suite 950, Irving, Texas 75038, the state of its organization is Texas, and its organizational number is 800695044; the mailing address of Mortgagee is Lincoln Plaza, 500 N. Akard Street, Suite 4200, Dallas, Texas 75201.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This instrument, prepared by Trevor Wommack, Bracewell & Giuliani LLP, 711 Louisiana, South Tower Pennzoil Place, Suite 2300, Houston, Texas 77002, (713) 221-1444, contains after-acquired property provisions and covers future advances and proceeds to the fullest extent allowed by applicable law.



EXHIBIT
C

213

00663

**ATTENTION RECORDING OFFICER:** This instrument is a mortgage of both real and personal property and is, among other things, a Security Agreement and Financing Statement under the Uniform Commercial Code in effect in the State of Oklahoma. This instrument creates a lien on rights in or relating to lands of Mortgagor which are described in <u>Exhibit A</u> hereto or in documents described in such <u>Exhibit A</u>.

**RECORDED DOCUMENT SHOULD BE RETURNED TO:**

BRACEWELL & GIULIANI LLP
711 Louisiana, South Tower Pennzoil Place, Suite 2900
Houston, Texas 77002
Attn: Trevor Wommack

00664

## MORTGAGE, LINE OF CREDIT MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT, FIXTURE FILING AND ASSIGNMENT OF PRODUCTION

THIS MORTGAGE, LINE OF CREDIT MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT, FIXTURE FILING, AND ASSIGNMENT OF PRODUCTION (the "Mortgage") dated effective as of the 10th day of October, 2008 ("Effective Date"), is executed and delivered by CORNERSTONE E&P COMPANY, LP, a Texas limited partnership ("Mortgagor"), to UNION BANK OF CALIFORNIA, N.A. in its capacity as the administrative agent under the Credit Agreement (as hereinafter defined) and on behalf of the Beneficiaries (as hereinafter defined) (the "Mortgagee"). The addresses of Mortgagor and Mortgagee appear in Section 7.12 of this Mortgage.

### RECITALS

A.    This Mortgage is executed in connection with, and pursuant to the terms of, the Credit Agreement dated as of December 20, 2006 (as renewed, extended, amended, supplemented and/or restated from time-to-time, the "Credit Agreement") among Mortgagor as the borrower, the lenders party thereto from time to time (the "Lenders"), and Mortgagee as administrative agent for the Lenders (in such capacity, the "Administrative Agent") and as issuing lender (in such capacity, "Issuing Lender").

B.    Mortgagor or any subsidiary of Mortgagor may from time-to-time enter into one or more Hydrocarbon Hedge Agreement or Interest Hedge Agreement (as defined in the Credit Agreement) with a Swap Counterparty (as defined in the Credit Agreement, and together with the Lenders, Mortgagee, Administrative Agent, and the Issuing Lender being collectively referred to herein as the "Beneficiaries").

C.    Mortgagor will directly or indirectly benefit from such Hydrocarbon Hedge Agreement or Interest Hedge Agreement entered by the Mortgagor or any Subsidiary of the Mortgagor with any Swap Counterparty.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration and in order to induce Administrative Agent, and the Lenders to enter into the Credit Agreement, the Mortgagor hereby agrees as follows:

### ARTICLE I
### Definitions

1.1    "Collateral" means the Realty Collateral, Personalty Collateral and Fixture Collateral.

1.2    "Contracts" means all contracts, agreements, operating agreements, farm-out or farm-in agreements, sharing agreements, mineral purchase agreements, contracts for the purchase, exchange, transportation, processing or sale of Hydrocarbons, rights-of-way, easements, surface leases, equipment leases, permits, franchises, licenses, pooling or unitization agreements, and unit or pooling designations and orders now or hereafter affecting any of the Oil and Gas Properties, Operating Equipment, Fixture Operating Equipment, or Hydrocarbons now or hereafter covered hereby, or which are useful or appropriate in drilling for, producing, treating, handling, storing, transporting or marketing oil, gas or other minerals produced from any of the Oil and Gas Properties, and all as such contracts and agreements as they may be amended, restated, modified, substituted or supplemented from time-to-time.

1.3    "Event of Default" shall have the meaning set forth in Article V hereof.

1.4     "Fixture Collateral" means all of Mortgagor's interest now owned or hereafter acquired in and to all Fixture Operating Equipment and all proceeds, products, renewals, increases, profits, substitutions, replacements, additions, amendments and accessions thereof, thereto or therefor.

1.5     "Fixture Operating Equipment" means any of the items described in the first sentence of the definition of "Operating Equipment" set forth below and which as a result of being incorporated into realty or structures or improvements located therein or thereon, with the intent that they remain there permanently, constitute fixtures under the laws of the state in which such equipment is located.

1.6     "Hydrocarbons" means oil, gas, coal seam gas, casinghead gas, drip gasoline, natural gasoline, condensate, distillate, and all other liquid and gaseous hydrocarbons produced or to be produced in conjunction therewith from a well bore and all products, by-products, and other substances derived therefrom or the processing thereof, and all other minerals and substances produced in conjunction with such substances, including sulfur, geothermal steam, water, carbon dioxide, helium, and any and all minerals, ores, or substances of value and the products and proceeds therefrom.

1.7     "Notes" means the "Notes" as that term is defined in the Credit Agreement.

1.8     "Obligations" means

(a)     The "Obligations", as that term is defined in the Credit Agreement, including all indebtedness evidenced by the Notes;

(b)     All other indebtedness, obligations, and liabilities of Mortgagor or any of its Subsidiaries arising under the Credit Agreement, this Mortgage, any Guaranty, any Hydrocarbon Hedge Agreement or Interest Hedge Agreement with a Swap Counterparty, or any of the other Loan Documents;

(c)     All other indebtedness, obligations and liabilities of any kind of Mortgagor or any of its Subsidiaries owing to any of the Beneficiaries now existing or hereafter arising under or pursuant to any Loan Document, whether fixed or contingent, joint or several, direct or indirect, primary or secondary, and regardless of how created or evidenced;

(d)     All sums advanced or costs or expenses incurred by Mortgagee or any of the other Beneficiaries, which are made or incurred pursuant to, or allowed by, the terms of this Mortgage plus interest thereon from the date of the advance or incurrence until reimbursement of Mortgagee or such Beneficiary charged at the Reimbursement Rate;

(e)     All future advances or other value, of whatever class or for whatever purpose, at any time hereafter made or given by Mortgagee or any of the other Beneficiaries to Mortgagor or any of its Subsidiaries under or pursuant to any Loan Document or any other agreement, document, or instrument, whether or not the advances or value are given pursuant to a commitment, whether or not the advances or value are presently contemplated by the parties hereto, and whether or not Mortgagor or any of its Subsidiaries is indebted to any Beneficiary at the time of such events; and

(f)     All renewals, extensions, modifications, amendments, rearrangements and substitutions of all or any part of the above whether or not Mortgagor or any of its Subsidiaries executes any agreement or instrument.

1.9    "Oil and Gas Property" or "Oil and Gas Properties" means (a) the oil and gas and/or oil, gas and mineral leases and leasehold interests, fee mineral interests, term mineral interests, participation interests, back-in or carried working interests, rights of first refusal, options, subleases, farmouts, royalties, overriding royalties, net profits interests, production payments and similar interests or estates described in Exhibit A attached hereto and made a part hereof for all purposes including the net revenue interests warranted in the Credit Agreement and any reversionary or carried interests relating to any of the foregoing, (b) all production units, and drilling and spacing units (and the Properties covered thereby) which may affect all or any portion of such interests including those units which may be described or referred to on Exhibit A and any units created by agreement or designation or under orders, regulations, rules or other official acts of any Federal, state or other governmental body or agency having jurisdiction, (c) the surface leases described in Exhibit A, (d) any and all non-consent interests owned or held by, or otherwise benefiting, Mortgagor and arising out of, or pursuant to, any of the Contracts, (e) any other interest in, to or relating to (i) all or any part of the land described in Exhibit A, the land relating to, or described in, the leases set forth in Exhibit A or in the documents described in Exhibit A, or (ii) any of the estates, property rights or other interests referred to above, (f) any instrument executed in amendment, correction, modification, confirmation, renewal or extension of the same, (g) any and all rights, titles and interests of Mortgagor (which are similar in nature to any of the rights, titles and interests described in (a) through (f) above) which are located on or under or which concern any Property or Properties located in counties referenced in Exhibit A hereto or counties in which a counterpart of this Mortgage is filed of record in the real property records of such county, and (h) all tenements, hereditaments and appurtenances now existing or hereafter obtained in connection with any of the aforesaid, including any rights arising under unitization agreements, orders or other arrangements, communitization agreements, orders or other arrangements or pooling orders, agreements or other arrangements, including without limitation pooling orders of the Oklahoma Corporation Commission.

1.10    "Operating Equipment" means all surface or subsurface machinery, equipment, facilities, supplies or other Property of whatsoever kind or nature now or hereafter located on any of the Property affected by the Oil and Gas Properties which are useful for the production, treatment, storage or transportation of Hydrocarbons, including all oil wells, gas wells, water wells, injection wells, casing, tubing, rods, pumping units and engines, christmas trees, derricks, separators, gun barrels, flow lines, pipelines, tanks, gas systems (for gathering, treating and compression), water systems (for treating, disposal and injection), supplies, derricks, wells, power plants, poles, cables, wires, meters, processing plants, compressors, dehydration units, lines, transformers, starters and controllers, machine shops, tools, storage yards and equipment stored therein, buildings and camps, telegraph, telephone and other communication systems, roads, loading racks, shipping facilities and all additions, substitutes and replacements for, and accessories and attachments to, any of the foregoing. Operating Equipment shall not include any items incorporated into realty or structures or improvements located therein or thereon in such a manner that they no longer remain personalty under the laws of the state in which such equipment is located.

1.11    "Permitted Liens" means "Permitted Liens" as defined in the Credit Agreement.

1.12    "Person" (whether or not capitalized) means an individual, partnership, corporation (including a business trust), joint stock company, limited liability company, limited liability partnership, trust, unincorporated association, joint venture or other entity, or a government or any political subdivision or agency thereof or any trustee, receiver, custodian or similar official.

1.13    "Personalty Collateral" means all of Mortgagor's interest now owned or hereafter acquired in and to (a) all Operating Equipment, (b) all Hydrocarbons severed and extracted from or attributable to the Oil and Gas Properties, including oil in tanks and all other "as-extracted" collateral from or attributable to the Oil and Gas Properties, (c) all accounts (including accounts resulting from the

sale of Hydrocarbons at the wellhead), contract rights and general intangibles, including all accounts, contract rights and general intangibles now or hereafter arising regardless of whether any of the foregoing is in connection with the sale or other disposition of any Hydrocarbons or otherwise, including all Liens securing the same, (d) all accounts, contract rights and general intangibles now or hereafter arising regardless of whether any of the foregoing is in connection with or resulting from any of the Contracts, including all Liens securing the same, (e) all proceeds and products of the Realty Collateral and any other contracts or agreements, (f) all information concerning the Oil and Gas Properties and all wells located thereon, including abstracts of title, title opinions, geological and geophysical information and logs, lease files, well files, and other books and records (including computerized records and data), (g) any deposit or time accounts with any Beneficiary, including Mortgagor's operating bank account and all funds and investments therein, (h) any options or rights of first refusal to acquire any Realty Collateral, and (i) all proceeds, products, renewals, increases, profits, substitutions, replacements, additions, amendments and accessions of, to or for any of the foregoing.

1.14    "Property" means any property of any kind, whether real, personal, or mixed and whether tangible or intangible.

1.15    "Realty Collateral" means all of Mortgagor's interest now owned or hereafter acquired in and to the Oil and Gas Properties, including any access rights, water and water rights, and all unsevered and unextracted Hydrocarbons (even though Mortgagor's interest therein may be incorrectly described in, or a description of a part or all of such interest may be omitted from, Exhibit A).

1.16    "Reimbursement Rate" means a per annum rate equal to the lesser of (a) the Maximum Rate (as defined in the Credit Agreement) and (b) the Adjusted Reference Rate (as defined in the Credit Agreement) in effect from time to time plus the Applicable Margin for Reference Rate Advances (as such terms are defined in the Credit Agreement) in effect during an Event of Default.

1.17    "Security Termination" means such time at which each of the following events shall have occurred on or prior to such time: (a) the indefeasible payment in full of all Obligations in cash and all other amounts payable under the Loan Documents, (b) the termination of all Hydrocarbon Hedge Agreements and Interest Hedge Agreements with the Beneficiaries, and (c) the termination of all the Commitments.

1.18    All other capitalized terms defined in the Credit Agreement which are used in this Mortgage and which are not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement. All meanings to defined terms, unless otherwise indicated, are to be equally applicable to both the singular and plural forms of the terms defined. Article, Section, Schedule, and Exhibit references are to Articles and Sections of and Schedules and Exhibits to this Mortgage, unless otherwise specified. All references to instruments, documents, contracts, and agreements are references to such instruments, documents, contracts, and agreements as the same may be amended, supplemented, and otherwise modified from time to time, unless otherwise specified. The words "hereof", "herein" and "hereunder" and words of similar import when used in this Mortgage shall refer to this Mortgage as a whole and not to any particular provision of this Mortgage. As used herein, the term "including" means "including, without limitation".

## ARTICLE II
### Creation of Security

2.1    **Conveyance and Grant of Lien**. In consideration of the advances or extensions by the Beneficiaries to the Mortgagor of the funds or credit constituting the Obligations (including the making of the Advances), and in further consideration of the mutual covenants contained herein, Mortgagor, by this

Mortgage hereby GRANTS, MORTGAGES, WARRANTS, CONVEYS, SELLS, TRANSFERS and ASSIGNS with a general warranty of title but subject to Section 4.2(b) as to Mortgagor's right, title, and interest in such Collateral, for the uses, purposes and conditions hereinafter set forth all of its right, title and interest in and to the Realty Collateral, the Personalty Collateral and the Fixture Collateral unto Mortgagee, its successors and assigns, WITH POWER OF SALE, to secure the payment and performance of the Obligations for the benefit of Mortgagee on behalf of the Beneficiaries.

**MORTGAGOR FURTHER GRANTS TO MORTGAGEE, ITS SUCCESSORS AND ASSIGNS, THE RIGHT AND POWER TO FORECLOSE THIS MORTGAGE UNDER THE OKLAHOMA POWER OF SALE MORTGAGE FORECLOSURE ACT, 46. O.S. § 40 ET SEQ.**

TO HAVE AND TO HOLD the Realty Collateral, the Personalty Collateral and the Fixture Collateral unto Mortgagee and its successors and assigns forever for the benefit of the Beneficiaries, together with all and singular the rights, hereditaments and appurtenances thereto in anywise appertaining or belonging, to secure payment of the Obligations and the performance of the covenants of Mortgagor contained in this Mortgage. Mortgagor does hereby bind itself, its successors and permitted assigns, to warrant and forever defend all and singular the Realty Collateral, the Personalty Collateral and the Fixture Collateral unto Mortgagee and its successors and assigns, against every Person whomsoever lawfully claiming or to claim the same, or any part thereof other except against holders of Permitted Liens.

Subject, however, to the condition that none of the Mortgagee or the Beneficiaries shall be liable in any respect for the performance of any covenant or obligation of the Mortgagor in respect of the Collateral. Any reference in Exhibit A to the name of a well shall not be construed to limit the Collateral to the well bore of such well or in the pro rata units. It is Mortgagor's intention that this instrument cover Mortgagor's entire interest in the lands, leases, units and other interests set forth in Exhibit A.

2.2     **Security Interest**. For the same consideration and to further secure the Obligations, Mortgagor hereby grants to Mortgagee for its benefit and the ratable benefit of the other Beneficiaries a security interest in and to the Collateral.

2.3     **Assignment of Liens and Security Interests**. For the same consideration and to further secure the Obligations, Mortgagor hereby assigns and conveys to Mortgagee for its benefit and the benefit of the other Beneficiaries any security interests held by Mortgagor arising under, and any liens granted to Mortgagor pursuant to, Title 12A of the Oklahoma Statutes (as amended from time to time).

**ARTICLE III**
**Proceeds from Production**

3.1     **Assignment of Production**.

(a)     In order to further secure the Obligations, Mortgagor has assigned, transferred, conveyed and delivered and does hereby assign, transfer, convey and deliver unto Mortgagee, effective as the Effective Date at 7:00 a.m. Dallas, Texas time, all Hydrocarbons produced from, and which are attributable to, Mortgagor's interest, now owned or hereafter acquired, in and to the Oil and Gas Properties, or are allocated thereto pursuant to pooling or unitization orders, agreements or designations, and all proceeds therefrom.

(b)     Subject to the provisions of subsection (f) below, all parties producing, purchasing, taking, possessing, processing or receiving any production from the Oil and Gas Properties, or having in their possession any such production, or the proceeds therefrom, for which they or others are accountable to Mortgagee by virtue of the provisions of this Section 3.1,

are authorized and directed by Mortgagor to treat and regard Mortgagee as the assignee and transferee of Mortgagor and entitled in its place and stead to receive such Hydrocarbons and the proceeds therefrom.

(c)     Mortgagor directs and instructs each of such parties to pay to Mortgagee, for its benefit and the ratable benefit of the other Beneficiaries, all of the proceeds of such Hydrocarbons until such time as such party has been furnished evidence that all of the Obligations have been paid and that the Lien evidenced hereby has been released; provided, however, that until Mortgagee shall have exercised the rights as herein to instruct such parties to deliver such Hydrocarbons and all proceeds therefrom directly to Mortgagee, such parties shall be entitled to deliver such Hydrocarbons and all proceeds therefrom to Mortgagor for Mortgagor's use and enjoyment, and Mortgagor shall be entitled to execute division orders, transfer orders and other instruments as may be required to direct all proceeds to Mortgagor without the necessity of joinder by Mortgagee in such division orders, transfer orders or other instruments. Mortgagor agrees to perform all such acts, and to execute all such further assignments, transfers and division orders, and other instruments as may be reasonably required or desired by Mortgagee or any party in order to have said revenues and proceeds so paid to Mortgagee. None of such parties shall have any responsibility for the application of any such proceeds received by Mortgagee. Subject to the provisions of subsection (f) below, Mortgagor authorizes Mortgagee to receive and collect all proceeds of such Hydrocarbons.

(d)     Subject to the provisions of subsection (f) below, Mortgagor will execute and deliver to Mortgagee any instruments Mortgagee may from time to time reasonably request for the purpose of effectuating this assignment and the payment to Mortgagee of the proceeds assigned.

(e)     Neither the foregoing assignment nor the exercise by Mortgagee of any of its rights herein shall be deemed to make Mortgagee a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Oil and Gas Properties or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Mortgagee, in person or by agent, assumes actual possession thereof, nor shall appointment of a receiver for the Oil and Gas Properties by any court at the request of Mortgagee or by agreement with Mortgagor or the entering into possession of the Oil and Gas Properties or any part thereof by such receiver be deemed to make Mortgagee a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Oil and Gas Properties or the use, occupancy, enjoyment or operation of all or any portion thereof.

(f)     Notwithstanding anything to the contrary contained herein, so long as no Default or Event of Default shall have occurred and is continuing, (a) Mortgagor shall have the right to collect all revenues and proceeds attributable to the Hydrocarbons that accrue to the Oil and Gas Properties or the products obtained or processed therefrom, as well as any Liens and security interests securing any sales of said Hydrocarbons and to retain, use and enjoy same and (b) Mortgagee shall not execute or deliver any transfer or division orders in the name of Mortgagor or otherwise relating to the Collateral.

(g)     Subject to the provisions of Section 3.1(f), Mortgagee may endorse and cash any and all checks and drafts payable to the order of Mortgagor or Mortgagee for the account of Mortgagor, received from or in connection with the proceeds of the Hydrocarbons affected hereby, and the same may be applied as provided herein. Subject to the provisions of Section 3.1(f), Mortgagee may execute any transfer or division orders in the name of Mortgagor or otherwise, with warranties and indemnities binding on Mortgagor; provided that Mortgagee shall

not be held liable to Mortgagor for, nor be required to verify the accuracy of, Mortgagor's interests as represented therein.

(h)     Subject to the provisions of Section 3.1(f), Mortgagee shall have the right at Mortgagee's election and in the name of Mortgagor, or otherwise, to prosecute and defend any and all actions or legal proceedings deemed advisable by Mortgagee in order to collect such proceeds and to protect the interests of Mortgagee or Mortgagor, with all costs, expenses and attorneys fees incurred in connection therewith being paid by Mortgagor. In addition, should any purchaser taking production from the Oil and Gas Properties fail to pay promptly to Mortgagee in accordance with this Article, Mortgagee shall have the right to demand a change of connection and to designate another purchaser with whom a new connection may be made without any liability on the part of Mortgagee in making such election, so long as ordinary care is used in the making thereof, and upon failure of Mortgagor to consent to such change of connection, the entire amount of all the Obligations may, at the option of Mortgagee, be immediately declared to be due and payable and subject to foreclosure hereunder.

(i)     Without in any way limiting the effectiveness of the foregoing provisions, if Mortgagor receives any proceeds which under this Section 3.1 are payable to Mortgagee, Mortgagor shall hold the same in trust and remit such proceeds, or cause them to be remitted, immediately, to Mortgagee.

3.2     **Application of Proceeds**.  All payments received by Mortgagee pursuant to this Article III attributable to the interest of Mortgagor in and to the Hydrocarbons shall be applied in the order set forth in Section 7.06 of the Credit Agreement.

3.3     **Mortgagor's Payment Duties**.  Except as provided in Section 7.16 hereof, nothing contained herein will limit Mortgagor's absolute duty to make payment of the Obligations regardless of whether the proceeds assigned by this Article III are sufficient to pay the same, and the receipt by Mortgagee of proceeds from Hydrocarbons under this Mortgage will be in addition to all other security now or hereafter existing to secure payment of the Obligations.

3.4     **Liability of Mortgagee**.  Mortgagee is hereby absolved from all liability for failure to enforce collection of any of such proceeds, and from all other responsibility in connection therewith except the responsibility to account to Mortgagor for proceeds actually received by Mortgagee.

3.5     **Actions to Effect Assignment**.  Subject to the provisions of Section 3.1(f), Mortgagor covenants to cause all operators, pipeline companies, production purchasers and other remitters of said proceeds to pay promptly to Mortgagee the proceeds from such Hydrocarbons in accordance with the terms of this Mortgage, and to execute, acknowledge and deliver to said remitters such division orders, transfer orders, certificates and other documents as may be necessary, requested or proper to effect the intent of this assignment; and Mortgagee shall not be required at any time, as a condition to its right to obtain the proceeds of such Hydrocarbons, to warrant its title thereto or to make any guaranty whatsoever. In addition, Mortgagor covenants to provide to Mortgagee, upon Mortgagee's request, the name and address of every such remitter of proceeds from such Hydrocarbons, together with a copy of the applicable division orders, transfer orders, sales contracts and governing instruments.  All expenses incurred by Mortgagee in the collection of said proceeds shall be repaid promptly by Mortgagor; and prior to such repayment, such expenses shall be a part of the Obligations secured hereby.  If under any existing Contracts for the sale of Hydrocarbons, other than division orders or transfer orders, any proceeds of Hydrocarbons are required to be paid by the remitter direct to Mortgagor so that under such existing Contracts payment cannot be made of such proceeds to Mortgagee in the absence of foreclosure, Mortgagor's interest in all proceeds of Hydrocarbons under such existing Contracts shall, when received

by Mortgagor, constitute trust funds in Mortgagor's hands for the benefit of the Mortgagee, and shall be immediately paid over to Mortgagee.

3.6     **Power of Attorney.** Without limitation upon any of the foregoing, Mortgagor hereby designates and appoints Mortgagee as true and lawful agent and attorney-in-fact (with full power of substitution, either generally or for such periods or purposes as Mortgagee may from time to time prescribe), with full power and authority, for and on behalf of and in the name of Mortgagor, to execute, acknowledge and deliver all such division orders, transfer orders, certificates and other documents of every nature, with such provisions as may from time to time, in the opinion of Mortgagee, be necessary or proper to effect the intent and purpose of the assignment contained in this Article III; and Mortgagor shall be bound thereby as fully and effectively as if Mortgagor had personally executed, acknowledged and delivered any of the foregoing orders, certificates or documents. The powers and authorities herein conferred on Mortgagee may be exercised by Mortgagee through any Person who, at the time of exercise, is the president, a senior vice president or a vice president of Mortgagee. **The power of attorney conferred by this Section 3.6 is granted for valuable consideration and coupled with an interest and is irrevocable so long as Security Termination has not occurred.** Any Person dealing with Mortgagee, or any substitute, shall be fully protected in treating the powers and authorities conferred by this Section 3.6 as continuing in full force and effect until advised by Mortgagee that Security Termination has occurred.

3.7     **Indemnification.** MORTGAGOR AGREES TO INDEMNIFY MORTGAGEE AND THE OTHER BENEFICIARIES, AND EACH OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS (COLLECTIVELY, THE "INDEMNIFIED PARTIES") FROM, AND DISCHARGE, RELEASE AND HOLD EACH OF THEM HARMLESS AGAINST ALL LOSSES, DAMAGES, CLAIMS, ACTIONS, LIABILITIES, JUDGMENTS, COSTS, ATTORNEYS FEES OR OTHER CHARGES OF WHATSOEVER KIND OR NATURE (HEREAFTER REFERRED TO AS "CLAIMS") MADE AGAINST, IMPOSED ON, INCURRED BY OR ASSERTED AGAINST ANY OF THEM IN ANY AS A CONSEQUENCE OF THE ASSERTION EITHER BEFORE OR AFTER THE PAYMENT IN FULL OF THE OBLIGATIONS THAT ANY OF THE INDEMNIFIED PARTIES RECEIVED HYDROCARBONS OR PROCEEDS PURSUANT TO THIS MORTGAGE OR PURSUANT TO ANY RIGHT TO COLLECT PROCEEDS DIRECTLY FROM ACCOUNT DEBTORS WHICH ARE CLAIMED BY THIRD PERSONS. THE INDEMNIFIED PARTIES WILL HAVE THE RIGHT TO EMPLOY ATTORNEYS AND TO DEFEND AGAINST ANY SUCH CLAIMS AND UNLESS FURNISHED WITH REASONABLE INDEMNITY, THE INDEMNIFIED PARTIES WILL HAVE THE RIGHT TO PAY OR COMPROMISE AND ADJUST ALL SUCH CLAIMS. MORTGAGOR WILL INDEMNIFY AND PAY TO THE INDEMNIFIED PARTIES ALL SUCH AMOUNTS AS MAY BE PAID IN RESPECT THEREOF, OR AS MAY BE SUCCESSFULLY ADJUDICATED AGAINST ANY OF THE INDEMNIFIED PARTIES. THE INDEMNITY UNDER THIS SECTION SHALL APPLY TO CLAIMS ARISING OR INCURRED BY REASON OF THE PERSON BEING INDEMNIFIED'S OWN NEGLIGENCE BUT SHALL NOT APPLY TO CLAIMS ARISING OR INCURRED BY REASON OF THE PERSON BEING INDEMNIFIED'S OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. THE LIABILITIES OF MORTGAGOR AS SET FORTH IN THIS SECTION 3.7 SHALL SURVIVE THE TERMINATION OF THIS MORTGAGE.

## ARTICLE IV
### Mortgagor's Warranties and Covenants

4.1     **Payment of Obligations.** Mortgagor covenants that Mortgagor shall timely pay and perform the Obligations secured by this Mortgage.

4.2     **Representations and Warranties.** Mortgagor represents and warrants as follows:

(a)    *Incorporation of Representations and Warranties from Credit Agreement.*  The representations and warranties applicable to Mortgagor and to its Properties contained in Article IV of the Credit Agreement are hereby confirmed and restated, each such representation and warranty, together with all related definitions and ancillary provisions, being hereby incorporated into this Mortgage by reference as though specifically set forth in this Section.

(b)    *Title to Collateral.*  Mortgagor has good and marketable title to the Collateral as is customary in the oil and gas industry in all material respects free from all Liens, claims, security interests or other encumbrances except for Permitted Liens.

(c)    *Status of Leases, Term Mineral Interests and Contracts.*  All of the leases and term mineral interests in the Oil and Gas Properties are valid, subsisting and in full force and effect, and Mortgagor has no knowledge that a default exists under any of the terms or provisions, express or implied, of any of such leases or interests or under any agreement to which the same are subject.  All of the Contracts and obligations of Mortgagor that relate to the Oil and Gas Properties are in full force and effect and constitute legal, valid and binding obligations of Mortgagor.  Neither Mortgagor nor, to the knowledge of Mortgagor, any other party to any leases or term mineral interests in the Oil and Gas Properties or any Contract (i) is in breach of or default, or with the lapse of time or the giving of notice, or both, would be in breach or default, with respect to any obligations thereunder, whether express or implied, or (ii) has given or threatened to give notice of any default under or inquiry into any possible default under, or action to alter, terminate, rescind or procure a judicial reformation of, any lease in the Oil and Gas Properties or any Contract.

(d)    *Production Burdens, Taxes, Expenses and Revenues.*  All rentals, royalties, overriding royalties, shut-in royalties and other payments due under or with respect to the Oil and Gas Properties have been properly and timely paid, except for payments held in suspense in the ordinary course of business or remitted to state agencies responsible for handling unclaimed property.  All taxes have been properly and timely paid except to the extent such taxes are being contested in good faith and for which reserves in accordance with GAAP have been made as reflected in the Financial Statements.  All expenses payable under the terms of the Contracts have been properly and timely paid except for such expenses being contested in good faith by appropriate proceedings, and for which reserves shall have been made therefore and except for such expenses as are being currently paid prior to delinquency in the ordinary course of business.  Except for Mortgagor's interests in certain Oil and Gas Properties, which Mortgagor represents do not constitute a material portion (with 2% or more being deemed material) of the value of the Collateral and all other Properties of Mortgagor securing the Obligations, all of the proceeds from the sale of Hydrocarbons produced from the Realty Collateral are being properly and timely paid to Mortgagor by the purchasers or other remitters of production proceeds without suspense.

(e)    *Pricing.*  The prices being received for the production of Hydrocarbons do not violate any Contract or any law or regulation.  Where applicable, all of the wells located on the Oil and Gas Properties and production of Hydrocarbons therefrom have been properly classified under appropriate governmental regulations.

(f)    *Gas Regulatory Matters.*  Mortgagor has filed with the appropriate state and federal agencies all necessary rate and collection filings and all necessary applications for well determinations under the Natural Gas Act of 1938, as amended, the Natural Gas Policy Act of 1978, as amended, and the rules and regulations of the Federal Energy Regulatory Commission (the "FERC") thereunder, and each such application has been approved by or is pending before the appropriate state or federal agency.

(g)    *Production Balances.*  Except as set forth below or permitted by the Credit Agreement, none of the purchasers under any production sales contracts are entitled to "make-up" or otherwise receive deliveries of Hydrocarbons at any time after the date hereof without paying at such time the full contract price therefor.  Except as set forth below, no Person is entitled to receive any portion of the interest of Mortgagor in any Hydrocarbons or to receive cash or other payments to "balance" any disproportionate allocation of Hydrocarbons under any operating agreement, gas balancing and storage agreement, gas processing or dehydration agreement, or other similar agreements.  Mortgagor believes that certain third parties may be entitled to receive "make-up" deliveries of Hydrocarbons or cash or other payments to "balance" a disproportionate allocation of Hydrocarbons produced from certain Oil and Gas Properties; provided, however, Mortgagor represents and warrants that such deliveries or payments are not material (with 2% or more being deemed material) in aggregate amount when compared to the value of the Collateral and all other Properties of Mortgagor securing the Obligations.

(h)    *Drilling Obligations.*  There are no obligations under any Oil and Gas Property or Contract which require the drilling of additional wells or operations to earn or to continue to hold any of the Oil and Gas Properties in force and effect, except for oil and gas leases that are still within their primary term (each of which will require drilling operations to perpetuate it beyond its primary term) and the standard provision in certain oil and gas leases that requires either production or operations to perpetuate each respective lease after the expiration of its primary term.

(i)    *Compliance With Laws.*  All wells on or attributable to the Oil and Gas Properties have been drilled, completed and operated, and all production therefrom has been accounted for and paid to the Persons entitled thereto, in compliance in all material respects with all applicable federal, state and local laws and applicable rules and regulations of the federal, state and local regulatory authorities having jurisdiction thereof.

(j)    *Regulatory Filings and Compliance.*  All necessary regulatory filings have been properly made, and all regulatory (including Environmental) processes have been complied with, in connection with the drilling, completion and operation of the wells on or attributable to the Oil and Gas Properties, and the issuance of all rights of way and other surface uses necessary for the exploration, development and transportation to and from such wells, and all other operations related thereto.

(k)    *Allowables.*  All production and sales of Hydrocarbons produced or sold from the Oil and Gas Properties have been made in accordance with any applicable allowables (plus permitted tolerances) imposed by any Governmental Authorities.

(l)    *Refund Obligations.*  Mortgagor has not collected any proceeds from the sale of Hydrocarbons produced from the Oil and Gas Properties which are subject to any refund obligation.

(m)    *Mortgagor's Address.*  The address of Mortgagor's place of business, residence, chief executive office and office where Mortgagor keeps its records concerning accounts, contract rights and general intangibles is as set forth in Section 7.12, and there has been no change in the location of Mortgagor's place of business, residence, chief executive office and office where it keeps such records and no change of Mortgagor's name during the four months immediately preceding the Effective Date.  Mortgagor hereby represents and warrants that its organizational number is 800695044; the state of its formation is Texas, and the correct spelling of its name is as set forth in its signature block below.

### 4.3    Further Assurances.

(a)    Mortgagor covenants that Mortgagor shall execute and deliver such other and further instruments, and shall do such other and further acts as in the reasonable opinion of Mortgagee may be necessary or desirable to carry out more effectively the purposes of this Mortgage, including without limiting the generality of the foregoing, (i) prompt correction of any defect in the execution or acknowledgment of this Mortgage, any written instrument comprising part or all of the Obligations, or any other document used in connection herewith; (ii) prompt correction of any defect which may hereafter be discovered in the title to the Collateral; (iii) prompt execution and delivery of all division or transfer orders or other instruments which in Mortgagee's opinion are required to transfer to Mortgagee, for its benefit and the ratable benefit of the other Beneficiaries, the assigned proceeds from the sale of Hydrocarbons from the Oil and Gas Properties; and (iv) prompt payment when due and owing of all taxes, assessments and governmental charges imposed on this Mortgage, upon the interest of Mortgagee, or upon the income and profits from any of the Collateral.

(b)    Mortgagor covenants that Mortgagor shall maintain and preserve the Lien and security interest herein created as an Acceptable Security Interest so long as Security Termination has not occurred.

(c)    Mortgagor shall immediately notify Mortgagee of any discontinuance of or change in the address of Mortgagor's place of business, residence, chief executive office or office where it keeps records concerning accounts, contract rights and general intangibles.

### 4.4    Operation of Oil and Gas Properties.    As long as Security Termination has not occurred, and whether or not Mortgagor is the operator of the Oil and Gas Properties, Mortgagor shall (at Mortgagor's own expense):

(a)    not enter into any operating agreement, contract or agreement which materially adversely affects the Collateral;

(b)    do all things necessary and within the reasonable control of Mortgagor to keep, or cause to be kept, in full force and effect the Oil and Gas Properties and Mortgagor's interests therein;

(c)    neither abandon, forfeit, surrender, release, sell, assign, sublease, farmout or convey, nor agree to sell, assign, sublease, farmout or convey, nor mortgage or grant security interests in, nor otherwise dispose of or encumber any of the Collateral or any interest therein, except as permitted by the Credit Agreement;

(d)    operate the Oil and Gas Properties or, to the extent that the right of operation is vested in others, will exercise its best efforts to cause the operator to operate the Oil and Gas Properties, in each case in such a manner as to cause the Collateral to be maintained, developed and protected against drainage and continuously operated for the production and marketing of Hydrocarbons in a good and workmanlike manner as a prudent operator would in accordance with (i) generally accepted practices, (ii) applicable oil and gas leases and Contracts, and (iii) all applicable Federal, state and local laws, rules and regulations;

(e)    promptly pay or, to the extent that the right of operation is vested in others, exercise its best efforts to cause to be paid, when due and owing (i) all rentals and royalties

payable in respect of the Collateral; (ii) all expenses incurred in or arising from the operation or development of the Collateral; (iii) all taxes, assessments and governmental charges imposed upon the Collateral, upon the income and profits from any of the Collateral, or upon Mortgagee because of its interest therein; and (iv) all local, state and federal taxes, payments and contributions for which Mortgagor may be liable except to the extent disputed as permitted under the Credit Agreement; and indemnify Mortgagee from all liability in connection with any of the foregoing;

(f)    promptly take all action necessary to enforce or secure the observance or performance of any term, covenant, agreement or condition to be observed or performed by third parties under any Contract, or any part thereof, or to exercise any of its rights, remedies, powers and privileges under any Contract, all in accordance with the respective terms thereof;

(g)    cause the Operating Equipment and the Fixture Operating Equipment necessary to the conduct of its business to be kept in good condition and repair (ordinary wear and tear excepted) and cause to be made all repairs, renewals, replacements, additions and improvements thereof or thereto, necessary or appropriate in connection with the production of Hydrocarbons from the Oil and Gas Properties;

(h)    do all things within the reasonable control of Mortgagor to enable Mortgagee (through any of its agents and employees) to enter upon the Oil and Gas Properties for the purpose of investigating and inspecting the condition and operations of the Collateral in accordance with the terms of the Credit Agreement;

(i)    cause the Collateral to be kept free and clear of Liens of every character other than the Permitted Liens;

(j)    subject to provisions of Section 4.7 below, carry and maintain the insurance required by the Credit Agreement;

(k)    furnish to Mortgagee, upon request, copies of any Contracts; and

(l)    timely and adequately perform all covenants express or implied in any Contract necessary to keep in full force and effect the Oil and Gas Properties and to maintain Mortgagor's interests therein.

4.5    **Recording**.  At Mortgagor's own expense, Mortgagor hereby authorizes Mortgagee to record, register, deposit and file this Mortgage and every other instrument in addition or supplement hereto, including applicable financing statements, in such offices and places within the state where the Collateral is located and in the state where the Mortgagor is registered as a limited partnership and at such times and as often as may be necessary to preserve, protect and renew the Lien and security interest herein created as an Acceptable Security Interest on real or personal property as the case may be, and otherwise shall do and perform all matters or things necessary or expedient to be done or observed by reason of any Legal Requirement for the purpose of effectively creating, perfecting, maintaining and preserving the Lien and security interest created hereby in and on the Collateral.

4.6    **Records, Statements and Reports**.  Mortgagor shall keep proper books of record and account in which complete and correct entries shall be made of Mortgagor's transactions in accordance with the method of accounting required in the Credit Agreement and shall furnish or cause to be furnished to Mortgagee the reports required to be delivered pursuant to the terms of the Credit Agreement.

4.7　**Insurance**.　To the extent that insurance is carried by a third-party operator on behalf of Mortgagor, upon request by Mortgagee, Mortgagor shall obtain and provide Mortgagee with copies of certificates of insurance showing Mortgagor as a named insured.　Mortgagor hereby assigns to Mortgagee for its benefit and the benefit of the other Beneficiaries any and all monies that may become payable under any such policies of insurance by reason of damage, loss or destruction of any of the Collateral and Mortgagee may receive such monies and apply all or any part of the sums so collected, at its election, toward payment of the Obligations, whether or not such Obligations are then due and payable, in such manner as Mortgagee may elect.　Any insurance proceeds received by Mortgagor shall be held in trust for the benefit of Mortgagee, shall be segregated from other funds of Mortgagor and shall be forthwith paid over to Mortgagee.

## ARTICLE V
## Default

5.1　**Events of Default**.　An Event of Default under the terms of the Credit Agreement shall constitute an "Event of Default" under this Mortgage.

5.2　**Acceleration Upon Default**.　Upon the occurrence and during the continuance of any Event of Default (other than pursuant to paragraph (e) of Section 7.01 of the Credit Agreement), Mortgagee may, or shall at the request of the Required Lenders, declare the entire unpaid principal of, and the interest accrued on, and all other amounts owed in connection with, the Obligations to be forthwith due and payable, whereupon the same shall become immediately due and payable without any protest, presentment, demand, notice of intent to accelerate, notice of acceleration or further notice of any kind, all of which are hereby expressly waived by Mortgagor.　If an Event of Default pursuant to Section 7.01(e) of the Credit Agreement shall occur, the entire unpaid principal of and interest accrued on, and all other amounts owed in connection with, the Obligations shall immediately and automatically become and be due and payable in full, without presentment, demand, protest or any notice of any kind (including, without limitation, any notice of intent to accelerate or notice of acceleration) all of which are hereby expressly waived by Mortgagor.　Whether or not Mortgagee or the Required Lenders elect to accelerate as herein provided, Mortgagee may simultaneously, or thereafter, without any further notice to Mortgagor, exercise any other right or remedy provided in this Mortgage or otherwise existing under the Credit Agreement or any other Loan Document or any other agreement, document, or instrument evidencing obligations owing from Mortgagor to any of the Beneficiaries.

## ARTICLE VI
## Mortgagee's Rights

6.1　**Rights to Realty Collateral Upon Default**.

(a)　*Operation of Property by Mortgagee*.　Upon the occurrence and during the continuance of any Event of Default, and in addition to all other rights of Mortgagor, Mortgagee shall have the following rights and powers (but no obligation):

(i)　To enter upon and take possession of any of the Realty Collateral and exclude Mortgagor therefrom;

(ii)　To hold, use, administer, manage and operate the Realty Collateral to the extent that Mortgagor could do so, and without any liability to Mortgagor in connection with such operations; and

(iii)     To the extent that Mortgagor could do so, to collect, receive and receipt for all Hydrocarbons produced and sold from the Realty Collateral, to make repairs, to purchase machinery and equipment, to conduct workover operations, to drill additional wells, and to exercise every power, right and privilege of Mortgagor with respect to the Realty Collateral.

Mortgagee may designate any person, firm, corporation or other entity to act on its behalf in exercising the foregoing rights and powers. When and if the expenses of such operation and development (including costs of unsuccessful workover operations or additional wells) have been paid, and Security Termination has occurred, the Realty Collateral shall be returned to Mortgagor (providing there has been no foreclosure sale).

(b)     *Judicial Proceedings.* Upon the occurrence and during the continuance of any Event of Default, the Mortgagee, in lieu of or in addition to exercising the power of sale hereafter given, may proceed by a suit or suits, in equity or at law (i) for the specific performance of any covenant or agreement herein contained or in aid of the execution of any power herein granted, (ii) for the appointment of a receiver whether there is then pending any foreclosure hereunder or the sale of the Realty Collateral, or (iii) for the enforcement of any other appropriate legal or equitable remedy. Furthermore, if an action is filed to foreclose this Mortgage, or if Mortgagee seeks to foreclose this Mortgage by power of sale under the Oklahoma Power of Sale Mortgage Foreclosure Act, Mortgagee shall be entitled to the immediate appointment of a receiver pursuant to 12 O.S. §1551(2)(c) without the necessity of further proof.

(c)     *Certain Aspects of Sale.* Mortgagee will have the right to become the purchaser at any foreclosure sale and to credit the then outstanding balance of the Obligations against the amount payable by Mortgagee as purchaser at such sale. Statements of fact or other recitals contained in any conveyance to any purchaser or purchasers at any sale made hereunder will conclusively establish the occurrence of any Event of Default, any acceleration of the maturity of the Obligations, the advertisement and conduct of such sale in the manner provided herein and the truth and accuracy of all other matters stated therein. Mortgagor does hereby ratify and confirm all legal acts that the Mortgagee may do in carrying out the Mortgagee's duties and obligations under this Mortgage, and Mortgagor hereby irrevocably appoints Mortgagee to be the attorney-in-fact of Mortgagor and in the name and on behalf of Mortgagor to execute and deliver any deeds, transfers, conveyances, assignments, assurances and notices which Mortgagor ought to execute and deliver and do and perform any and all such acts and things which Mortgagor ought to do and perform under the covenants herein contained and generally to use the name of Mortgagor in the exercise of all or any of the powers hereby conferred on Mortgagee. Upon any sale, whether under the power of sale hereby given or by virtue of judicial proceedings, it shall not be necessary for Mortgagee or any public officer acting under execution or by order of court, to have physically present or constructively in his possession any of the Collateral, and Mortgagor hereby agrees to deliver to the purchaser or purchasers at such sale on the date of sale the Collateral purchased by such purchasers at such sale and if it should be impossible or impracticable to make actual delivery of such Collateral, then the title and right of possession to such Collateral shall pass to the purchaser or purchasers at such sale as completely as if the same had been actually present and delivered.

(d)     *Effect of Sale.* Any sale or sales of the Realty Collateral will operate to divest all right, title, interest, claim and demand whatsoever, either at law or in equity, of Mortgagor in and to the premises and the Realty Collateral sold, and will be a perpetual bar, both at law and in equity, against Mortgagor, Mortgagor's successors or assigns, and against any and all Persons claiming or who shall thereafter claim all or any of the Realty Collateral sold by, through or under

Mortgagor, or Mortgagor's successors or assigns. Nevertheless, if requested by the Mortgagee so to do, Mortgagor shall join in the execution and delivery of all proper conveyances, assignments and transfers of the Property so sold. The purchaser or purchasers at the foreclosure sale will receive as incident to his, her, its or their own ownership, immediate possession of the Realty Collateral purchased and Mortgagor agrees that if Mortgagor retains possession of the Realty Collateral or any part thereof subsequent to such sale, Mortgagor will be considered a tenant at sufferance of the purchaser or purchasers and will be subject to eviction and removal by any lawful means, with or without judicial intervention, and all damages by reason thereof are hereby expressly waived by Mortgagor.

(e) *Provisions with Respect to the Power of Sale.* Notwithstanding any other provisions in this Mortgage, if Mortgagee sells the Collateral under the power of sale granted by this Mortgage, the following provisions shall apply:

(i) The notices described in Title 46 Okla. Stat. Sec. 40 and following, as amended (the "Act"), shall be given as and when required therein;

(ii) All notices which are required to be given Mortgagor under the Act may be given to Mortgagor at the address which is set forth in the first paragraph of this Mortgage, or if such address has been changed pursuant to this Mortgage, to that changed address;

(iii) Mortgagee may purchase part or all of the Collateral at any such sale;

(iv) Mortgagor stipulates the total amounts owing under this Mortgage will have benefited Mortgagor substantially and are not unconscionable in amount, and therefore the total amount of the Obligations, less the fair market value of the Collateral sold under such Act, and any prior indebtedness, shall be available as a deficiency judgment against Mortgagor;

(v) The purchaser under such sale may seek and obtain a writ of assistance by application to the District Court in the county in Oklahoma in which any part of the Realty Collateral is located, or the United States District Court having venue for actions arising in such county;

(vi) Mortgagee may, at its option, proceed with foreclosure under judicial proceedings instead of exercising the rights of this Power of Sale;

(vii) All other procedures and requirements of such Act shall be followed;

(viii) After the completion of the sale as contemplated by such Act, the purchaser shall have all of Mortgagor's right, title and interest in and to the Collateral, free and clear of all rights of Mortgagor, and free and clear of all rights of any Person with a priority which is subordinate to the lien of this Mortgage, except any right which may be reserved under such Act;

(ix) Any recitation in any notice, publication thereof, recordation thereof, or deed, of the existence of an event of default, giving, publication, service and recordation of notice, occurrence of the sale at the time and place set forth in such notice or any postponement authorized and effective under such Act, circumstances of sale and bidding, and compliance with the terms of such Act, shall be presumed to be statements

of fact and no Person shall be required to investigate the truthfulness or accuracy of any such recitation; and

    (x)    The proceeds of any such sale shall be applied first to the costs, attorney fees, and expenses of sale, next to the Obligations; except that if such application of proceeds conflicts with the requirements of such Act, the proceeds shall be applied as provided under such Act only to the extent of any such conflict.

    (f)    *Application of Proceeds.*  The proceeds of any sale of the Realty Collateral or any part thereof, whether under the power of sale herein granted and conferred or by virtue of judicial proceedings, shall either be, at the option of Mortgagee, applied at the time of receipt, or held by Mortgagee in a cash collateral account as additional Collateral, and in either case, applied in the order set forth in Section 7.06 of the Credit Agreement.

    (g)    *Appraisement and Marshalling.*  Mortgagor agrees, to the full extent that Mortgagor may lawfully so agree, that Mortgagor will not at any time insist upon or plead or in any manner whatever claim the benefit of any appraisement, valuation, stay, extension or redemption law, now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, the absolute sale of the Collateral, including the Realty Collateral, or the possession thereof by any purchaser at any sale made pursuant to this Mortgage or pursuant to the decree of any court of competent jurisdiction. Mortgagee hereby waives or does not waive appraisement, such election to be made at or before entry of judgment in any action to foreclose this Mortgage, and Mortgagor, for Mortgagor and all who may claim through or under Mortgagor, hereby waives, to the extent that Mortgagor may lawfully do so under any applicable law, any and all rights to have the Collateral, including the Realty Collateral, marshaled upon any foreclosure of the Lien hereof or sold in inverse order of alienation. Mortgagor agrees that, in the event of a judicial foreclosure or a sale under the power of sale provisions of this Mortgage, the Mortgagee may sell the Collateral, including the Realty Collateral, in part, in parcels or as an entirety as directed by Mortgagee.

    6.2    **Rights to Personalty Collateral Upon Default.**  Upon the occurrence and during the continuance of any Event of Default, Mortgagee may proceed against the Personalty Collateral in accordance with the rights and remedies granted herein with respect to the Realty Collateral, or will have all rights and remedies granted by the Uniform Commercial Code as in effect in Oklahoma and this Mortgage. Mortgagee shall have the right to take possession of the Personalty Collateral, and for this purpose Mortgagee may enter upon any premises on which any or all of the Personalty Collateral is situated and, to the extent that Mortgagor could do so, take possession of and operate the Personalty Collateral or remove it therefrom. Mortgagee may require Mortgagor to assemble the Personalty Collateral and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties. Unless the Personalty Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Mortgagee will send Mortgagor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition of the Personalty Collateral is to be made. This requirement of sending reasonable notice will be met if such notice is mailed, postage prepaid, to Mortgagor at the address designated in Section 7.12 hereof (or such other address as has been designated as provided herein) at least ten days before the time of the sale or disposition. In addition to the expenses of retaking, holding, preparing for sale, selling and the like, Mortgagee will be entitled to recover attorney's fees and legal expenses as provided for in this Mortgage and in the writings evidencing the Obligations before applying the balance of the proceeds from the sale or other disposition toward satisfaction of the Obligations. Mortgagor will remain liable for any deficiency remaining after the sale or other disposition.

6.3    **Rights to Fixture Collateral Upon Default.** Upon the occurrence and during the continuance of any Event of Default, Mortgagee may elect to treat the Fixture Collateral as either Realty Collateral or as Personalty Collateral (but not both) and proceed to exercise such rights as apply to the type of Collateral selected.

6.4    **Account Debtors.** Mortgagee may, in its discretion, after the occurrence and during the continuance of an Event of Default, (a) notify any account debtor on any accounts constituting Collateral to make payments directly to Mortgagee, (b) instruct any party described in Section 3.1(b) to deliver all Hydrocarbons assigned to Mortgagee as described in Section 3.1(a) and all proceeds therefrom directly to Mortgagee, and (c) contact such account debtors and other parties directly to verify information furnished by Mortgagor with respect to such account debtors and such accounts.

6.5    **Costs and Expenses.** All sums advanced or costs or expenses incurred by Mortgagee (either by it directly or on its behalf by any receiver appointed hereunder) in protecting and enforcing its rights hereunder shall constitute a demand obligation owing by Mortgagor to Mortgagee as part of the Obligations. Mortgagor hereby agrees to repay such sums on demand plus interest thereon from the date of the advance or incurrence until reimbursement of Mortgagee at the Reimbursement Rate.

6.6    **Set-Off.** Upon the occurrence and during the continuance of any Event of Default, Mortgagee shall have the right to set-off any funds of Mortgagor in the possession of Mortgagee against any amounts then due by Mortgagor to Mortgagee pursuant to this Mortgage.

## ARTICLE VII
### Miscellaneous

7.1    **Advances by Mortgagee.** Each and every covenant of Mortgagor herein contained shall be performed and kept by Mortgagor solely at Mortgagor's expense. If Mortgagor fails to perform or keep any of the covenants of whatsoever kind or nature contained in this Mortgage, Mortgagee (either by it directly or on its behalf by any receiver appointed hereunder) may, but will not be obligated to, make advances to perform the same on Mortgagor's behalf, and Mortgagor hereby agrees to repay such sums and any attorneys' fees incurred in connection therewith on demand plus interest thereon from the date of the advance until reimbursement of Mortgagee at the Reimbursement Rate. In addition, Mortgagor hereby agrees to repay on demand any costs, expenses and attorney's fees incurred by Mortgagee which are to be obligations of Mortgagor pursuant to, or allowed by, the terms of this Mortgage, including such costs, expenses and attorney's fees incurred pursuant to Section 3.1(h), Section 6.5 or Section 7.2 hereof, plus interest thereon from the date of the advance by Mortgagee until reimbursement of Mortgagee at the Reimbursement Rate. Such amounts will be in addition to any sum of money which may, pursuant to the terms and conditions of the written instruments comprising part of the Obligations, be due and owing. No such advance will be deemed to relieve Mortgagor from any default hereunder.

7.2    **Defense of Claims.** Mortgagor shall promptly notify Mortgagee in writing of the commencement of any legal proceedings affecting Mortgagor's title to the Collateral or Mortgagee's Lien or security interest in the Collateral, or any part thereof, and shall take such action, employing attorneys agreeable to Mortgagee, as may be necessary to preserve Mortgagor's and Mortgagee's rights affected thereby. If Mortgagor fails or refuses to adequately or vigorously, in the sole judgment of Mortgagee, defend Mortgagor's or Mortgagee's rights to the Collateral, Mortgagee may take such action on behalf of and in the name of Mortgagor and at Mortgagor's expense. Moreover, Mortgagee may take such independent action in connection therewith as they may in their discretion deem proper, including the right to employ independent counsel and to intervene in any suit affecting the Collateral. All costs, expenses and attorneys' fees incurred by Mortgagee pursuant to this Section 7.2 or in connection with the defense by Mortgagee of any claims, demands or litigation relating to Mortgagor, the Collateral or the

transactions contemplated in this Mortgage shall be paid by Mortgagor on demand plus interest thereon from the date of such demand by Mortgagee until reimbursement of Mortgagee at the Reimbursement Rate.

7.3 **Termination**. If Security Termination has occurred and the covenants herein contained are well and fully performed then all of the Collateral will revert to Mortgagor to the extent not otherwise transferred or sold as permitted under Legal Requirements or under this Mortgage and the entire estate, right, title and interest of Mortgagee will thereupon cease; and Mortgagee in such case shall, upon the request of Mortgagor and the payment by Mortgagor of all attorneys' fees and other expenses, deliver to Mortgagor proper instruments acknowledging satisfaction of this Mortgage.

7.4 **Renewals, Amendments and Other Security**. Without notice or consent of Mortgagor, renewals and extensions of the written instruments constituting part or all of the Obligations may be given at any time and amendments may be made to agreements relating to any part of such written instruments or the Collateral. Mortgagee may take or hold other security for the Obligations without notice to or consent of Mortgagor. The acceptance of this Mortgage by Mortgagee shall not waive or impair any other security Mortgagee may have or hereafter acquire to secure the payment of the Obligations nor shall the taking of any such additional security waive or impair the Lien and security interests herein granted. Mortgagee may resort first to such other security or any part thereof, or first to the security herein given or any part thereof, or from time to time to either or both, even to the partial or complete abandonment of either security, and such action will not be a waiver of any rights conferred by this Mortgage. This Mortgage may not be amended, waived or modified except in a written instrument executed by both Mortgagor and Mortgagee.

7.5 **Security Agreement, Financing Statement and Fixture Filing**. This Mortgage will be deemed to be and may be enforced from time to time as an assignment, chattel mortgage, contract, deed of trust, financing statement, real estate mortgage, or security agreement, and from time to time as any one or more thereof if appropriate under applicable state law. **AS A FINANCING STATEMENT, THIS MORTGAGE IS INTENDED TO COVER ALL PERSONALTY COLLATERAL INCLUDING MORTGAGOR'S INTEREST IN ALL HYDROCARBONS AS AND AFTER THEY ARE EXTRACTED AND ALL ACCOUNTS ARISING FROM THE SALE THEREOF AT THE WELLHEAD. THIS MORTGAGE SHALL BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING WITH RESPECT TO FIXTURE COLLATERAL INCLUDED WITHIN THE COLLATERAL.** This Mortgage shall be filed in the real estate records or other appropriate records of the county or counties in the state in which any part of the Realty Collateral and Fixture Collateral is located as well as the Uniform Commercial Code records or other appropriate office of the state in which any Collateral is located. At Mortgagee's request, Mortgagor shall execute financing statements covering the Personalty Collateral, including all Hydrocarbons sold at the wellhead, and Fixture Collateral, which financing statements may be filed in the Uniform Commercial Code records or other appropriate office of the county or state in which any of the Collateral is located or in any other location permitted or required to perfect Mortgagee's security interest under the Uniform Commercial Code. In addition, Mortgagor hereby irrevocably authorizes Mortgagee and any affiliate, employee or agent thereof, at any time and from time to time, to file in any Uniform Commercial Code jurisdiction any financing statement or document and amendments thereto, without the signature of Mortgagor where permitted by law, in order to perfect or maintain the perfection of any security interest granted under this Mortgage. A photographic or other reproduction of this Mortgage shall be sufficient as a financing statement.

7.6 **Unenforceable or Inapplicable Provisions**. If any term, covenant, condition or provision hereof is invalid, illegal or unenforceable in any respect, the other provisions hereof will remain

in full force and effect and will be liberally construed in favor of Mortgagee in order to carry out the provisions hereof.

7.7 **Rights Cumulative**. Each and every right, power and remedy herein given to Mortgagee will be cumulative and not exclusive, and each and every right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by Mortgagee and the exercise, or the beginning of the exercise, of any such right, power or remedy will not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy. No delay or omission by Mortgagee in the exercise of any right, power or remedy will impair any such right, power or remedy or operate as a waiver thereof or of any other right, power or remedy then or thereafter existing.

7.8 **Waiver by Mortgagee**. Any and all covenants in this Mortgage may from time to time by instrument in writing by Mortgagee and the Required Lenders, be waived to such extent and in such manner as Mortgagee may desire, but no such waiver will ever affect or impair Mortgagee's rights hereunder, except to the extent specifically stated in such written instrument.

7.9 **Terms**. The term "Mortgagor" as used in this Mortgage will be construed as singular or plural to correspond with the number of Persons executing this Mortgage as Mortgagor. If more than one Person executes this Mortgage as Mortgagor, his, her, its, or their duties and liabilities under this Mortgage will be joint and several. The terms "Mortgagee" and "Mortgagor" as used in this Mortgage include the heirs, executors or administrators, successors, representatives, receiver, trustees and assigns of those parties. Unless the context otherwise requires, terms used in this Mortgage which are defined in the Uniform Commercial Code of Oklahoma are used with the meanings therein defined.

7.10 **Counterparts**. This Mortgage may be executed in any number of counterparts, each of which will for all purposes be deemed to be an original, and all of which are identical except that, to facilitate recordation, in any particular counties counterpart portions of Exhibit A hereto which describe Properties situated in counties other than the counties in which such counterpart is to be recorded may have been omitted.

7.11 **Governing Law**. This Mortgage shall be governed by and construed in accordance with the laws of the State of Oklahoma.

7.12 **Notice**. All notices required or permitted to be given by Mortgagor or Mortgagee shall be made in the manner set forth in the Credit Agreement and shall be addressed as follows:

|          |                                      |
|----------|--------------------------------------|
| Mortgagor: | Cornerstone E&P Company, LP<br>5605 MacArthur Boulevard, Suite 950<br>Irving, Texas 75038<br>Attention:   Barb Bomersbach<br>Facsimile:   972.753.4810 |
| Mortgagee: | Union Bank of California, N.A.<br>Lincoln Plaza<br>500 N. Akard Street, Suite 4200<br>Dallas, Texas  75201<br>Attention:   Ms. Kimberly Coil<br>Facsimile:   214.922.4227 |

7.13 **Condemnation.** All awards and payments heretofore and hereafter made for the taking of or injury to the Collateral or any portion thereof whether such taking or injury be done under the power of eminent domain or otherwise, are hereby assigned, and shall be paid to Mortgagee. Mortgagee is hereby authorized to collect and receive the proceeds of such awards and payments and to give proper receipts and acquittances therefor. Mortgagor hereby agrees to make, execute and deliver, upon request, any and all assignments and other instruments sufficient for the purpose of confirming this assignment of the awards and payments to Mortgagee free and clear of any encumbrances of any kind or nature whatsoever. Any such award or payment may, at the option of Mortgagee, be retained and applied by Mortgagee after payment of attorneys' fees, costs and expenses incurred in connection with the collection of such award or payment toward payment of all or a portion of the Obligations, whether or not the Obligations are then due and payable, or be paid over wholly or in part to Mortgagor for the purpose of altering, restoring or rebuilding any part of the Collateral which may have been altered, damaged or destroyed as a result of any such taking, or other injury to the Collateral.

7.14 **Successors and Assigns.**

(a)    This Mortgage is binding upon Mortgagor, Mortgagor's successors and assigns, and shall inure to the benefit of each Beneficiary (other than Swap Counterparties) and each of its successors and assigns, and to the benefit of the Swap Counterparties, and each of their respective successors and assigns if such Swap Counterparty or an Affiliate of such Swap Counterparty is a Lender, and the provisions hereof shall likewise be covenants running with the land.

(b)    Subject to clause (d) below, this Mortgage shall be transferable and negotiable, with the same force and effect and to the same extent as the Obligations may be transferable, it being understood that, upon the transfer or assignment by the Beneficiaries (or any of them) of any of the Obligations, the legal transfer or assignment by the Beneficiaries (or any of them) of any of the Obligations, the legal holder of such Obligations shall have all of the rights granted to the Mortgagee for the benefit of the Beneficiaries under this Mortgage. The Mortgagor specifically agrees that upon any transfer of all or any portion of the Obligations, this Mortgage shall secure with retroactive rank the existing Obligations of the Mortgagor to the transferee and any and all Obligations to such transferee thereafter arising.

(c)    The Mortgagor hereby recognizes and agrees that the Beneficiaries (or any of them) may, from time to time, one or more times, transfer all or any portion of the Obligations to one or more third parties. Such transfers may include, but are not limited to, sales of participation interests in such Obligations in favor of one or more third parties. Upon any transfer of all or any portion of the Obligations and subject to clause (d) below, the Mortgagee may transfer and deliver any and/or all of the Collateral to the transferee of such Obligations and such Collateral shall secure any and all of the Obligations in favor of such a transferee then existing and thereafter arising, and after any such transfer has taken place, the Mortgagee shall be fully discharged from any and all future liability and responsibility to the Mortgagor with respect to such Collateral, and transferee thereafter shall be vested with all the powers, rights and duties with respect such Collateral.

(d)    Notwithstanding anything to the contrary contained herein, including the provisions of clauses (b) and (c) above, when any Swap Counterparty assigns or otherwise transfers any interest held by it under any Hydrocarbon Hedge Agreement or Interest Hedge Agreement to any other Person pursuant to the terms of such agreement, that other Person shall thereupon become vested with all the benefits held by such Secured Party under this Mortgage only if such Person is also then a Lender or an Affiliate of a Lender.

7.15 **Article and Section Headings**. The article and section headings in this Mortgage are inserted for convenience of reference and shall not be considered a part of this Mortgage or used in its interpretation.

7.16 **Usury Not Intended**. It is the intent of Mortgagor and Mortgagee in the execution and performance of this Mortgage, the Credit Agreement and the other Loan Documents to contract in strict compliance with applicable usury laws governing the Obligations including such applicable usury laws of the State of Oklahoma and the United States of America as are from time-to-time in effect. In furtherance thereof, Mortgagee and Mortgagor stipulate and agree that none of the terms and provisions contained in this Mortgage, the Credit Agreement or the other Loan Documents shall ever be construed to create a contract to pay, as consideration for the use, forbearance or detention of money, interest at a rate in excess of the maximum non-usurious rate permitted by applicable law and that for purposes hereof "interest" shall include the aggregate of all charges which constitute interest under such laws that are contracted for, charged or received under this Mortgage, the Credit Agreement and the other Loan Documents; and in the event that, notwithstanding the foregoing, under any circumstances the aggregate amounts taken, reserved, charged, received or paid on the Obligations, include amounts which by applicable law are deemed interest which would exceed the maximum non-usurious rate permitted by applicable law, then such excess shall be deemed to be a mistake and Mortgagee shall credit the same on the principal of the Obligations (or if the Obligations shall have been paid in full, refund said excess to Mortgagor). In the event that the maturity of the Obligations is accelerated by reason of any election of Mortgagee resulting from any Event of Default, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum non-usurious rate permitted by applicable law and excess interest, if any, provided for in this Mortgage, the Credit Agreement or other Loan Documents shall be canceled automatically as of the date of such acceleration and prepayment and, if theretofore paid, shall be credited on the Obligations or, if the Obligations shall have been paid in full, refunded to Mortgagor. In determining whether or not the interest paid or payable under any specific contingencies exceeds the maximum non-usurious rate permitted by applicable law, Mortgagor and Mortgagee shall to the maximum extent permitted under applicable law amortize, prorate, allocate and spread in equal part during the period of the full stated term of the Obligations, all amounts considered to be interest under applicable law of any kind contracted for, charged, received or reserved in connection with the Obligation.

7.17 **Credit Agreement**. To the fullest extent possible, the terms and provisions of the Credit Agreement shall be read together with the terms and provisions of this Mortgage so that the terms and provisions of this Mortgage do not conflict with the terms and provisions of the Credit Agreement; provided, however, notwithstanding the foregoing, in the event that any of the terms or provisions of this Mortgage conflict with any terms or provisions of the Credit Agreement, the terms or provisions of the Credit Agreement shall govern and control for all purposes; provided that the inclusion in this Mortgage of terms and provisions, supplemental rights or remedies in favor of the Secured Party not addressed in the Credit Agreement shall not be deemed to be a conflict with the Credit Agreement and all such additional terms, provisions, supplemental rights or remedies contained herein shall be given full force and effect.

7.18 **Due Authorization**. Mortgagor hereby represents, warrants and covenants to Mortgagee that the obligations of Mortgagor under this Mortgage are the valid, binding and legally enforceable obligations of Mortgagor, that the execution, ensealing and delivery of this Mortgage by Mortgagor has been duly and validly authorized in all respects by Mortgagor, and that the persons who are executing and delivering this Mortgage on behalf of Mortgagor have full power, authority and legal right to so do, and to observe and perform all of the terms and conditions of this Mortgage on Mortgagor's part to be observed or performed.

7.19 **No Offsets, Etc**. Mortgagor hereby represents, warrants, and covenants to Mortgagee that there are no offsets, counterclaims or defenses at law or in equity against this Mortgage or the indebtedness secured hereby.

7.20 **Bankruptcy Limitation**. Notwithstanding anything contained herein to the contrary, it is the intention of the Mortgagor, the Mortgagee and the other Beneficiaries that the amount of the Obligation secured by the Mortgagor's interests in any of its Property shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer and other similar law, rule or regulation of any Governmental Authority applicable to the Mortgagor. Accordingly, notwithstanding anything to the contrary contained in this Mortgage in any other agreement or instrument executed in connection with the payment of any of the Obligations, the amount of the Obligations secured by the Mortgagor's interests in any of its Property pursuant to this Mortgage shall be limited to an aggregate amount equal to the largest amount that would not render the Mortgagor's obligations hereunder or the Liens and security interest granted to the Mortgagee hereunder subject to avoidance under Section 548 of the United States Bankruptcy Code or any comparable provision of any other applicable law.

**THIS WRITTEN AGREEMENT AND THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.**

[SIGNATURE PAGES FOLLOW]

00686

NOTICE TO MORTGAGOR:

A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE.

EXECUTED AND DELIVERED effective as of the date first written above.

MORTGAGOR:

CORNERSTONE E&P COMPANY, LP, a Texas
limited partnership
By: Cornerstone Southwest GP LLC, its general
partner

By:
Name: John T. Sanchez
Title: President & CEO

THE STATE OF TEXAS §
§
COUNTY OF __Dallas__ §

This instrument was acknowledged before me on this 9th day of October, 2008, by __John Sanchez__ as __President & CEO__ of Cornerstone Southwest GP LLC, a Texas limited liability company and the sole general partner of Cornerstone E&P Company, LP, a Texas limited partnership, on behalf of said limited partnership.

Olivia Van Slyke
NOTARY PUBLIC
State of Texas
My Comm. Exp. 1-22-2011

Notary Public in and for
the State of Texas

## Exhibit "A"

The designation "Overriding Royalty Interest" "ORRI" means an interest in production which is free of any obligation for the expense of exploration, development, and production, bearing only its pro rata share of severance, production, and other similar taxes and, in instances where the document creating the overriding royalty interest so provides, costs associated with compression, dehydration, other treating or processing, or transportation of production of oil, gas, or other minerals relating to the marketing of such production. The designation "Royalty Interest" or "RI" means an interest in production which results from an ownership in the mineral fee estate or royalty estate in the relevant land and which is free of any obligation for the expense of exploration, development, and production, bearing only its pro rata share of severance, production, and other similar taxes and, in instances where the document creating the royalty interest so provides, costs associated with compression, dehydration, other treating or processing or transportation of production of oil, gas, or other minerals relating to the marketing of such production.

Any reference in this Exhibit A to wells or units is for warranty of interest, administrative convenience, and identification and shall not limit or restrict the right, title, interest, or Properties covered by this Mortgage. All right, title, and interest of Mortgagor in the Properties described herein and in Exhibit A are and shall be subject to this Mortgage, regardless of the presence of any units or wells not described herein.

The reference to book or volume and page herein and in Exhibit A refer to the recording location of each respective Realty Collateral described herein and in Exhibit A in the county where the land covered by the Realty Collateral is located.

EXHIBIT A

| Lessee Name | Lessor Name | Lease County | Lease State | Tract Legal Description | Recording Information |
|---|---|---|---|---|---|
| Cornerstone E & P Company, LP | Yin Yin Tan (aka Yin Yin Edmonds) | Hughes | Oklahoma | T006N-R009E-35 - SE/4 SE/4 and all that part of the SW/4 SE/4 lying East of Big Creek 55 acres, more or less, in Hughes County, Oklahoma | 06/05/2007, Book 1098, Page 555, Entry 06333 |
| Cornerstone E & P Company, LP | James E. Condreay | Hughes | Oklahoma | T006N-R009E-35 - SE/4 SE/4 and all that part of the SW/4 SE/4 lying East of Big Creek 55 acres, more or less, in Hughes County, Oklahoma | 05/24/2007, Book 1096, Page 877, Entry 05814 |
| Cornerstone E & P Company, LP | Sheila R. Valpredo | Hughes | Oklahoma | T006N-R009E-07, N/2 NE/4 80 acres, more or less, in Hughes County, Oklahoma | 02/16/2007, Book 1084, Page 550, Entry 001584 |
| Cornerstone E & P Company, LP | Judith Ann Cowart & David Michael Cowart | Hughes | Oklahoma | T006N-R009E-07, N/2 NE/4 80 acres, more or less, in Hughes County, Oklahoma | 05/04/2007, Book 1093, Page 735, Entry 04869 |
| Cornerstone E & P Company, LP | L.A. Johnston & Linda Johnston | Hughes | Oklahoma | T006N-R009E-07, N/2 NE/4 80 acres, more or less, in Hughes County, Oklahoma | 06/06/2007, Book 1098, Page 853, Entry 06409 |
| Cornerstone E & P Company, LP | Kathy Radach & Lester Radach | Hughes | Oklahoma | T006N-R009E-07, N/2 NE/4 80 acres, more or less, in Hughes County, Oklahoma T006N-R009E-07, Lots 1 & 2 | 05/16/2007, Book 1095, Page 418, Entry 05377 |
| Cornerstone E & P Company, LP | Bobby J. Perkins | Hughes | Oklahoma | 81.55 acres, more or less, in Hughes County, Oklahoma T006N-R009E-07, West 20.74 acres of Lot # 3 and the West 20.71 acres of Lot # 4 41.45 acres, more or less, in Hughes County, Oklahoma | 02/16/2007, Book 1054, Page 547 |
| Cornerstone E & P Company, LP | Bobby J. Perkins, AIF for Louise Perkins | Hughes | Oklahoma | T006N-R009E-07, West 20.74 acres of Lot # 3 and the West 20.71 acres of Lot # 4 41.45 acres, more or less, in Hughes County, Oklahoma | 02/16/2007, Book 1084, Page 544, Entry 001582 |
| Cornerstone E & P Company, LP | Evelyn Perkins Womble | Hughes | Oklahoma | T006N-R009E-07, SE/4 NE/4 40 acres, more or less, in Hughes County, Oklahoma | 02/16/2007, Book 1084, Page 553, Entry 001585 |
| Cornerstone E & P Company, LP | Don T. Olivo | Hughes | Oklahoma | T006N-R009E-07, SE/4 NE/4 40 acres, more or less, in Hughes County, Oklahoma | 03/05/2007, Book 1086, Page 312, Entry 002188 |
| Cornerstone E & P Company, LP | John L. Hering & Beverly A. Hering | Hughes | Oklahoma | T006N-R009E-07, SE/4 NE/4 40 acres, more or less, in Hughes County, Oklahoma | 05/04/2007, Book 1093, Page 709, Entry 04860 |
| Cornerstone E & P Company, LP | Janie Smith and Russell Smith | Hughes | Oklahoma | T006N-R009E-07, SE/4 NE/4 40 acres, more or less, in Hughes County, Oklahoma | 02/26/2007, Book 1085, Page 447, Entry 001881 |

00689

EXHIBIT A

| Lessee Name | Lessor Name | Lease County | Lease State | Tract Legal Description | Recording Information |
|---|---|---|---|---|---|
| Cornerstone E & P Company, LP | Brenna Lynette Drake & Norman Stafford Drake | Hughes | Oklahoma | T005N-R009E-07, NW/4 SE/4 40 acres, more or less, in Hughes County, Oklahoma | 04/13/2007, Book 1090, Page 859, Entry 003807 |
| Cornerstone E & P Company, LP | Bradley James Mullins & Dee Mullins | Hughes | Oklahoma | T005N-R009E-07, SE/4, SE/4 SE/4 10 acres, more or less, in Hughes County, Oklahoma | 04/13/2007, Book 1090, Page 850, Entry 003804 |
| Cornerstone E & P Company, LP | Mark Lee Mullins and Sherry Mullins | Hughes | Oklahoma | T005N-R009E-07, NW/4 SE/4 40 acres, more or less, in Hughes County, Oklahoma | 04/13/2007, Book 1090, Page 856, Entry 003806 |
| Cornerstone E & P Company, LP | Robert M. Lucas | Hughes | Oklahoma | T005N-R009E-07, SW/4 NE/4; SE/4 NW/4; NE/4 SW/4; and the East 20 acres of Lot 3, 140 acres, more or less, in Hughes County, Oklahoma | 02/16/2007, Book 1084, Page 583 Entry 001580 |
| Cornerstone E & P Company, LP | John C. Lucas Rozanne Truscott Turner Revoc. Tr dtd 10/29/99 | Hughes | Oklahoma | T005N-R009E-07, NE/4 SE/4 40 acres, more or less, in Hughes County, Oklahoma | 02/16/2007, Book 1084, Page 541 Entry 001581 |
| Cornerstone E & P Company, LP | David Turner | Hughes | Oklahoma | T005N-R009E-07, NE/4 SE/4 40 acres, more or less, in Hughes County, Oklahoma | 03/30/2007, Book 1088, Page 849, Entry 003156 |
| Cornerstone E & P Company, LP | Mellissa Taylor Turner Family Limited Partnership | Hughes | Oklahoma | T005N-R009E-07, SW/4 NE/4; SE/4 NW/4; NE/4 SW/4; and the East 20 acres of Lot 3, 140 acres, more or less, in Hughes County, Oklahoma | 03/30/2007, Book 1088, Page 846, Entry 03155 |
| Cornerstone E & P Company, LP | Nancy J Allford, Managing | Hughes | Oklahoma | T005N-R009E-07, NE/4 SE/4 40 acres, more or less, in Hughes County, Oklahoma | 03/30/2007, Book 1088, Page 831, Entry 003150 |
| Cornerstone E & P Company, LP | Alice Smith Warren | Hughes | Oklahoma | T005N-R009E-07, SW/4 NE/4; SE/4 NW/4; NE/4 SW/4; and the East 20 acres of Lot 3, 140 acres, more or less, in Hughes County, Oklahoma | 05/16/2007, Book 1095, Page 424, Entry 05379 |
| Cornerstone E & P Company, LP | Clara Mae Ward | Hughes | Oklahoma | T005N-R009E-07, SW/4 NE/4; SE/4 NW/4; NE/4 SW/4; and the East 20 acres of Lot 3, 140 acres, more or less, in Hughes County, Oklahoma | 05/21/2007, Book 1096, Page 309, Entry 05638 |

EXHIBIT A

| Lessee Name | Lessor Name | Lease County | Lease State | Tract Legal Description | Recording Information |
|---|---|---|---|---|---|
| Cornerstone E & P Company, LP | Thressa D. Smith | Hughes | Oklahoma | T005N-R009E-07, SW/4 NE/4; SE/4 NW/4; NE/4 SW/4; and the East 20 acres of Lot 3, 140 acres, more or less, in Hughes County, Oklahoma | 05/18/2007, Book 1095, Page 704, Entry 05450 |
| Cornerstone E & P Company, LP | Thomas David Lackey Hughes | Hughes | Oklahoma | T005N-R009E-07, SW/4 NE/4; SE/4 NW/4; NE/4 SW/4; and the East 20 acres of Lot 3, 140 acres, more or less, in Hughes County, Oklahoma | 04/19/2007, Book 1091, Page 620, Entry 004038 |
| Cornerstone E & P Company, LP | Frances Ann Halstead Hughes | Hughes | Oklahoma | T005N-R009E-07, SW/4 NE/4; SE/4 NW/4; NE/4 SW/4; and the East 20 acres of Lot 3, 140 acres, more or less, in Hughes County, Oklahoma | 05/16/2007, Book 1095, Page 421, Entry 05378 |
| Cornerstone E & P Company, LP | William Alan Lackey | Hughes | Oklahoma | T005N-R009E-07, SW/4 NE/4; SE/4 NW/4; NE/4 SW/4; and the East 20 acres of Lot 3, 140 acres, more or less, in Hughes County, Oklahoma T005N-R009E-13, NW/4 NW/4 and N/2 SW/4 NW/4 | 04/19/2007, Book 1091, Page 617, Entry 004037 |
| Cornerstone E & P Company, LP | Orion Enterprises, LLC Willie Bea Phillips, Trustee | Hughes | Oklahoma | 60 acres, more or less, in Hughes County, Oklahoma | 04/30/2007, Book 1093, Page 129, Entry 04613 |
| Cornerstone E & P Company, LP | Willie Bea Phillips Revoc. Liv Betty Jo Perkins, Trustee | Hughes | Oklahoma | T005N-R009E-13, NW/4 NW/4 and N/2 SW/4 NW/4 60 acres, more or less, in Hughes County, Oklahoma | 04/05/2007, Book 1089, Page 714, Entry 003387 |
| Cornerstone E & P Company, LP | Perkins Family Revoc. Living Trus | Hughes | Oklahoma | T005N-R008E-02, Lot 4 and the SW/4 NW/4 79.17 acres, more or less, in Hughes County, Oklahoma | 04/19/2007, Book 1091, Page 626, Entry 004040 |
| Cornerstone E & P Company, LP | Robert Lee Stillwell et ux Gail Stillwell | Hughes | Oklahoma | T005N-R009E-11, W/2 NV4 NE/4; E/2 NE/4 NW/4; E/2 NW/4 NE/4 NW/4 (45 acres); 45 acres, more or less, in Hughes County, Oklahoma | 12/04/2007, Book 1124, Page 573, Entry 14375 |