Mr. Samuel L. Stricklin
State Bar No. 19397050
Mr. William J. Moore
State Bar No. 24051075
BRACEWELL & GIULIANI LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202-2711
Telephone:  (214) 468-3800
Facsimile:  (214) 468-3888

ATTORNEYS FOR UNION BANK, N.A.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORNERSTONE E&P COMPANY, L.P., | § | Case No. 09-35228-bjh |
| *et. al* | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

**UNION BANK OF CALIFORNIA, N.A.'S RESPONSE TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR CLARIFICATION OF FINAL CASH COLLATERAL / VENDOR FINANCING ORDER ENTERED AUGUST 25, 2009 (DOC. 81) OR IN THE ALTERNATIVE FOR RELIEF FROM SAME PURSUANT TO RULE 60(B)**

Union Bank of California, N.A. n/k/a Union Bank, N.A. ("Union Bank") hereby files its

Response to the Motion of Official Committee of Unsecured Creditors (the "Committee") for

Clarification of Final Cash Collateral / Vendor Financing Order Entered August 25, 2009 (Doc.

81) or in the Alternative for Relief from Same pursuant to Rule 60(B) (the "Motion"), and in

support thereof respectfully represents as follows:

**I.     FACTUAL BACKGROUND**

1.     Pursuant to a  Credit Agreement dated as of December 20, 2006 (the "Credit

Agreement"), Union Bank advanced and issued letters of credit resulting in exposure of

approximately $30 million to Cornerstone E&P Company, LP ("Cornerstone") to finance the

acquisition and development of oil and gas properties and for working capital and other general partnership purposes. In connection with the closing of the Credit Agreement and in consideration of the advances of credit contemplated therein, Cornerstone executed mortgages and security agreements for recording in Texas and Oklahoma granting liens in favor of Union Bank on substantially all of Cornerstone's assets, including substantially all of its oil and gas properties. The parties updated the Oklahoma mortgage and prepared a supplement to the Texas mortgage listing specific oil and gas leasehold interests, working interests and other property and rights which served as collateral for the Cornerstone letters of credit, and filed these mortgage documents and UCC-1 financing statements in Hill County, Texas, and Hughes County, Oklahoma, the counties in which the majority of Cornerstone's assets were situated.

2. On August 6, 2009, Cornerstone filed for voluntary Chapter 11 bankruptcy protection, along with its affiliated debtor Cornerstone Southwest GP, LLC (together with Cornerstone, "the Debtors").

3. Also on August 6, 2009, the Debtors filed their Emergency Motion for an Order (i) Approving Interim and Final Use of Cash Collateral and Granting Adequate Protection (ii) Granting Authority to Make Payments to Royalty and Working Interest Owners; and (iii) Approving Vendor-Financing Agreement (the "Cash Collateral Motion") [Doc. No. 15]. The Court entered an Amended Agreed Interim Cash Collateral / Vendor Financing Order [Doc. No. 35]. A Final hearing was scheduled for August 24, 2009, and objections to the Cash Collateral Motion and the Debtors' proposed final order on the same were due to be filed by August 21, 2009.

4. The Committee filed its Limited Objection to the Cash Collateral Motion (the "Limited Objection") on August 21 [Doc. No. 74]. In the Limited Objection, the Committee included "Objections to Lender's Security Interests," objecting to Paragraph 28 of the Debtors' proposed final order on the Cash Collateral Motion, in which it argued that the "the Proposed Final Order only allows 60 days after entry of the Final Order by which such objections must be filed," and requested 90 days as "necessary to allow for sufficient time to investigate and analyze the validity and priority of the Lender's pre-petition liens." *See* Limited Objection, ¶ 7.

5. The Court held a hearing for a final order on the Cash Collateral Motion on August 24, at which the Committee was represented. The Court entered its Final Cash Collateral / Vendor Financing Order (i) Approving Interim and Final Use of Cash Collateral and Granting Adequate Protection (ii) Granting Authority to Make Payments to Royalty and Working Interest Owners; and (iii) Approving Vendor-Financing Agreement (the "Cash Collateral Order") on August 25, 2009 [Doc. No. 81]. The Cash Collateral Order extended the time by which the Committee was required to challenge Union Bank liens from 60 days, as originally requested, to 75 days.

6. As noted by the Committee in its Motion, the Cash Collateral Order provided:

27. Notwithstanding anything contained herein to the contrary, the extent, validity, perfection and enforceability of the Prepetition Obligations and the Prepetition Lender's liens on the Prepetition Collateral are for all purposes subject to the rights of any party in interest with proper standing, other than the Debtors, to **file a complaint pursuant to Bankruptcy Rule 7001, seeking to invalidate, subordinate or otherwise challenge the Prepetition Obligations and/or the Prepetition Lender's prepetition liens upon and security interests in the Prepetition Collateral; provided, however, that if such complaint is not (a) filed by such parties in interest with proper standing to assert such complaint or the Committee, within 75 days following the date of the entry of this Final Cash Collateral / Vendor Financing Order** or (b) filed – solely with respect to challenges by a Trade Lien Creditor to the validity and/or the priority of the

Prepetition Lender's pre-petition liens upon a Trade Lien Creditor's collateral – by such Trade Lien Creditor within 30 days following the date on which the first proposed plan of reorganization is filed in these cases (provided, however, any challenges filed after 75 days shall relate only to validity and perfection of the Prepetition Lenders' pre-petition liens under applicable state law and shall not relate to actions pursuant to chapter 5 of the Bankruptcy Code), then: (i) the Prepetition Obligations and the Prepetition Lender's security interests in and liens upon the Prepetition Collateral shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, perfected and senior to all other liens upon and claims against the Prepetition Collateral to the extent provided herein, and the Prepetition Obligations shall be allowed in the full amount specified above pursuant to sections 502 and 506 of the Bankruptcy Code, and **(ii) the acknowledgements and stipulations contained above shall be binding on all parties in interest.** Nonetheless, nothing in this Order shall be deemed to grant standing to any other party to commence any adversary proceeding or contested matter.

*See* Cash Collateral Order, at ¶ 27 (emphasis added).

7.      The 75-day period specified by the Cash Collateral Order for the Committee to "file a complaint pursuant to Bankruptcy Rule 7001, seeking to invalidate, subordinate or otherwise challenge . . . the Prepetition Lender's prepetition liens upon and security interests in the Prepetition Collateral" expired on November 8, 2009.  The Committee did not file any such complaint.

8.      The Cash Collateral Order set a similar deadline by which "Trade Lien Creditors" must file any complaint challenging the validity and/or priority of Union Bank's liens upon those creditors' collateral.  That deadline was December 14, 2009.  As of that date, several purported mineral lienholders filed adversary proceedings seeking declarations from the Court that, *inter alia*, such claimants' liens are valid and perfected and Union Bank either has no liens on certain mineral leases or that such liens are subordinate to those of the claimants.  These five adversary proceedings have been consolidated and are set for trial in August 2010.

## II.    ARGUMENT AND AUTHORITIES

**A.    The Committee's "Motion for Clarification" Is Nothing More than a Request to Act in Derogation of the Cash Collateral Order**

9.    Despite the deadline for the Committee to file complaints challenging Union Bank's Liens expiring nearly six months ago, the Committee now seeks to do exactly that by way of its Motion.  Couching the relief requested in its Motion as an attempt to obtain "clarification" of the Cash Collateral Order, the Committee seeks an order from the Court allowing it to "file an adversary proceeding for the purpose of determining that liens in fact do not exist prepetition on certain property."  *See* the Motion, ¶ 15.  However, the Cash Collateral Order is abundantly clear the Committee was required to file a complaint "seeking to invalidate, subordinate or *otherwise challenge the Prepetition Obligations and/or the Prepetition Lender's prepetition liens*" on the Debtor's prepetition collateral within 75 days of August 25, 2009, the date the Cash Collateral Order was entered, or otherwise have the findings described in the Cash Collateral Order become binding on it.  *See* Cash Collateral Order, ¶ 27 (emphasis added).

10.    The Committee states in its Motion that "[t]he language and intent of the Cash Collateral Order, particularly paragraph 27, was to provide UBOC with certainty as to a time when it would know which of its Prepetition Liens would be challenged by the filing of an adversary proceeding pursuant to B.R. 7001 which provides for the necessity of a complaint to be filed when a party seeks to 'determine the validity, priority, or extent of a lien or other interest in property.'"  *See* the Motion, ¶ 14.  As further noted by the Committee, Paragraph 27 of the Cash Collateral Order "protects UBOC directly from the filing of a complaint under B.R. 7001 'seeking to invalidate, subordinate or otherwise challenge the Prepetition Obligations and/or the Prepetition Lender's pre-petition liens upon and security interests in the Prepetition Collateral.'"

*Id.* at ¶ 14.  It is surprising that the Committee would cite these protections in its Motion when it: (1) now seeks to file an adversary proceeding against Union Bank almost six months after the Court's 75-day deadline expired; and (2) now seeks to file an adversary proceeding against Union Bank challenging liens it has consistently claimed to be valid and perfected since the Debtors filed for Chapter 11 protection (and before).

11.    Regardless of the strained interpretation the Committee makes of the relief it seeks in its Motion in order to circumvent the protections given Union Bank in the Cash Collateral Order, it is clear that the Committee wants to "file a complaint . . . seeking to invalidate, subordinate or otherwise challenge the . . . Prepetition Lender's prepetition liens upon and security interests in the Prepetition Collateral."  *See* Cash Collateral Order, ¶ 27.  The Committee's opportunity to do this has long since expired.

**B.    Relief Is Not Warranted Under Fed. R. Civ. P. 60**

12.    Implicitly recognizing that it has missed its opportunity to avoid being bound the Court's findings in the Cash Collateral Order, the Committee seeks relief from the Cash Collateral Order under Federal Rule of Civil Procedure 60(b), which allows a Court to relieve a party from a final order for certain specific reasons.  The Committee relies on the following alleged reasons in arguing that it should be excused from compliance with the Cash Collateral Order: (1) mistake, inadvertence, or excusable neglect – Rule 60(b)(1); (2) fraud, misrepresentation, or misconduct by an opposing party – Rule 60(b)(3); and (3) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) – Rule 60(b)(2).

13.     The Committee vaguely explains that these reasons apply because "[i]n the latter part of November, after expiration of the 75 day challenge period, it in fact was learned that these representations [i.e., that Union Bank had a perfected security on interest all of the Debtors' oil and gas properties, with certain exceptions] were inaccurate, and that there existed numerous oil and gas leases on which UBOC had never taken a prepetition security interest of any kind." *See* the Motion, ¶ 18.  Initially, it should be noted that the Committee's statement that "UBOC had never taken a prepetition security interest of any kind" on certain leases is not a fact but an argument the Committee should have made in adversary proceeding initiated months ago.  As already discussed, Union Bank has always taken the position that its liens attach to all of the Debtors' leases in the counties in which Union Bank perfected its security interests.

14.     It should also be noted that "[a] motion under Rule 60(b) must be made within a reasonable time."  FED. R. CIV. P. 60(c)(1).  The Committee fails to explain why, if it learned in "the latter part of November" 2009 that Union Bank did not hold certain liens, it has waited until April 2010 to file its Rule 60(b) motion.  Regardless, none of the excuses proffered by the Committee justify its being excused from the requirements of the Court's eight-month-old Cash Collateral Order.

### 1.     Mistake, Inadvertence, or Excusable Neglect

15.     When determining whether there has been excusable neglect, a court reviews all relevant circumstances surrounding the party's omission. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). These circumstances might include (1) "the danger of prejudice to the [non-movant]," (2) "the length of the delay and its potential impact on judicial proceedings," and (3) "the reason for the delay,

including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

16.     The Committee's argument that Union Bank will suffer no prejudice if the Motion is granted because other mineral lien creditors have already filed adversary proceedings[1] requesting a determination that Union Bank does not hold liens on certain leases is not true. These adversary proceedings were filed in December 2009, have been consolidated, and are set for trial, pursuant to a Scheduling Order entered by this Court, in August.  Union Bank should not be forced to tackle the issue as to whether it holds liens on multiple fronts, from different types of creditors, on different time tables.  Further, the adversary proceedings do not necessarily cover all of the leases that the Committee would likely claim are not subject to Union Bank's liens.  The Committee then, seeks, to potentially broaden the challenge against Union Bank and further chip away at its security interest.  Finally, the Committee by way of its Motion seeks to remove the protections the Committee admits were given to Union Bank in the Cash Collateral Order.  *See* Paragraph 10, *supra*.  Union Bank will suffer significant prejudice if the Committee is given the relief it seeks.

17.     Most importantly, the Committee has simply shown no reason for waiting until after the 75-day period prescribed by the Cash Collateral Order, much less waiting until this late in the game, to attempt to challenge Union Bank's lien claims.  It had the opportunity to object to the relief requested in the Cash Collateral Motion, and in fact *did* object to and presented argument about the same ostensible paragraph in the Debtors' proposed order on which it now seeks clarification.  The Committee did not file this Motion when "it . . . was learned" "in the

latter part of November" that Union Bank allegedly did not hold liens on certain leases. It did

not file this Motion when various other mineral lienholders filed their adversary proceedings in

December 2009 within the deadline set by the Court in the Cash Collateral Order, despite the fact

that several of these lienholders' representatives were appointed by the U.S. Trustee to serve on

the Committee in August 2009. *See* Appointment of Unsecured Creditor's Committee [Doc. No.

63]. It did not file this Motion when Union Bank answered these adversary proceedings in

January 2010, or when the parties moved to consolidate the adversary proceedings in late

January 2010. The Committee's neglect in failing to file an adversary proceeding seeking to

challenge Union Bank's liens is not excusable.

### 2.     Fraud, Misrepresentation, or Misconduct

18.     The Committee suggests that it should be relieved from the deadline set in the

Cash Collateral Order because Union Bank inaccurately represented to the Court that it had

perfected security interests that it did not in fact have. "A party making a Rule 60(b)(3) motion

must "establish by clear and convincing evidence (1) that the adverse party engaged in fraud or

other misconduct and (2) that this misconduct prevented the moving party from fully and fairly

presenting his case.'" *Government Fin. Servs. One Ltd. Partnership v. Peyton Place*, 62 F.3d 767,

772 (5th Cir. 1995) (citing *Washington v. Patlis*, 916 F.2d 1036, 1039 (5th Cir.1990)). "The

purpose of the rule is to afford parties relief from judgments which are unfairly obtained, not

those which may be factually incorrect." *Id.* The burden of proving fraud or misrepresentation

under Rule 60(b)(3) by clear and convincing evidence falls on the moving party. *Anthony v.

Canal Indemn. Co.*, 347 Fed. Appx. 110, 113 (5th Cir. 2009).

---

[1] This begs the question as to why Union Bank is forced to deal with the Committee's

19.     The Committee has offered no evidence (much less clear and convincing evidence), nor has it even offered any explanation, as to why it believes Union Bank's representations to the Court regarding its liens are untrue.  Union Bank denies that it ever misrepresented to the Court the nature and extent of the liens, and as explained above, contends that it holds valid, first-priority liens on substantially all of the Debtors property interests.  The Committee's contention that these sorts of representations to the Court are inaccurate is an argument, not a fact, that should have been the subject of an adversary proceeding, which the Committee missed its chance to file.

20.     In addition, the Committee appears to argue that it did not comply with the Cash Collateral Order's 75-day deadline because "it was expressly conveyed to the Court that UBOC did indeed have a perfected interest all [sic] of the Debtor's oil and gas properties," and that it failed to challenge Union Bank's liens within the deadline in reliance upon these representations. *See* the Motion, ¶ 18.  However, this position is inconsistent with the Committee's request that the Court extend the Committee's deadline to challenge Union Bank's claimed liens in its Limited Objection, so that it could "investigate and analyze the validity and priority of the Lender's pre-petition liens."  *See* Limited Objection, ¶ 7.  If the Committee acted reasonably in taking Union Bank at its word that it had a perfected security interest on Cornerstone's oil and gas properties, why would need extra time to investigate and analyze Union Bank's liens?

**3.     Newly Discovered Evidence**

21.     Finally, the Committee claims that it should be afforded relief from the Cash Collateral Order under Federal Rule of Civil Procedure 60(b)(2).  The court may relieve a party .

---

motion now, approximately five months after the referenced adversary proceedings were filed.

. . from a final judgment . . . for . . . newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." *Provident Life & Acc. Ins. C. v. Goel*, 274 F.3d 984, 1000 (5ᵗʰ Cir. 2001) (quoting FED. R. CIV. P. 60(b )(2)). "To succeed on a motion brought under 60(b)(2) based on newly discovered evidence, the movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) 'the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.'" *Id.* (quoting *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200–01 (5ᵗʰ Cir. 1993).

22.     The Committee offers no explanation as to how or if it exercised any due diligence in concluding that "UBOC failed to have deeds of trust on a significant number of the Debtor's oil and gas leases after the Committee's deadline had passed."  *See* the Motion, ¶ 27. The Debtors noted in the Cash Collateral Motion on August 6, 2009, that "[t]he Prepetition Lender further alleges that the Prepetition Obligations are secured by first priority, valid, binding, perfected and enforceable liens and security interests (the "Prepetition Liens") granted by Borrower to the Prepetition Lender . . . upon and in all of the assets and property of the Borrower whether then owned or thereafter acquired, and all proceeds and products thereof…" *See* Cash Collateral Motion, ¶ 10.  The Cash Collateral Order, entered 19 days later, gave the Committee 75 days from the date of entry of that order to challenge that assertion—in fact, this 75-day period was extended from 60 days pursuant to the Committee's request so that the Committee could "investigate the validity and priority of the Lender's pre-petition liens." *See* Limited Objection, ¶ 7.  The Committee could have used reasonable diligence to obtain and review Union Bank's lien filings well within the time period it was given to do so.  Indeed,

various secured lien claimants—some of whom are members of the Committee—did exactly that and filed adversary proceedings months ago challenging Union Bank's liens.

## III. CONCLUSION

23.     The Committee has shown no compelling reason that it should be allowed to be challenge Union Bank's liens nearly six months after missing its deadline to do so.  Therefore, and for the reasons described above, Union Bank requests that the Court deny the Committee's Motion for Clarification of Final Cash Collateral / Vendor Financing Order Entered August 25, 2009 (Doc. 81) or in the Alternative for Relief from Same Pursuant to Rule 60(B) in its entirety.

DATED:  May 4, 2010.

Respectfully submitted,

BRACEWELL & GIULIANI LLP


By:     /s/ Samuel L. Stricklin
          Samuel L. Stricklin
          Texas Bar No. 19397050
          William J. Moore
          Texas Bar No. 24051075
          michael.dinnin@bgllp.com
          will.moore@bgllp.com

1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
Telephone:(214) 468-3800
Facsimile: (214) 468-3888

**ATTORNEYS FOR DEFENDANT,
UNION BANK, N.A.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2010, a true and correct copy of the foregoing was served (a) upon the parties on the attached Master Service List by email (if available as indicated thereon) or United States mail and (b) by ECF transmission on the parties receiving electronic notice in this case pursuant to the Court's electronic case filing system.


          /s/ William J. Moore
          William J. Moore

414206.2